UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MANUEL G. MILAN, | : |
| Plaintiff, | : **Civil Action No. 18-13735 (JXN) (JSA)** |
| v. | : |
| | : **OPINION** |
| NEW JERSEY TRANSIT RAIL OPERATIONS, INC., | : |
| Defendant. | : |

**NEALS**, District Judge:

This matter comes before the Court on Defendant New Jersey Transit Rail Operations, Inc.'s ("NJT" or "Defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 84). Jurisdiction and venue are proper pursuant to 28 U.S.C. §§ 1331 and 1391(b)(2), respectively. The Court has carefully considered the parties' submissions and decides this matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Defendant's motion (ECF No. 84) is **GRANTED-IN-PART**, with respect to excluding Jason A. Smith, M.D.'s ("Dr. Smith") opinion. All other claims for relief are **DENIED**.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

This dispute arises out of personal injuries sustained by Plaintiff Manuel G. Milan ("Plaintiff") on September 14, 2015, while employed by NJT. (Plaintiff's Statement of Disputed Material Facts (ECF No. 85-3) ("PSOF") ¶ 13; Defendant's Response to Plaintiff's Statement of Disputed Material Facts (ECF No. 86-1) ("DRSOF") ¶ 13). At the time of the incident, Plaintiff was working an assignment known as G-1, which involved a passenger train assignment with a route from Gladstone to Hoboken, New Jersey. (Defendant's Statement of Undisputed Material

Facts (ECF No. 84-2) ("DSOF") ¶¶ 12, 14-16; Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (ECF No. 85-2) ("PRSOF") ¶¶ 12, 14-16).  Plaintiff was part of a three-person train crew, Plaintiff as the conductor, Carlos Rosado ("Rosado") as the assistant conductor/rear brake, and George Brown as the engineer.[1]  (DSOF ¶ 18; PRSOF ¶ 18).

Five of the first six station stops on the route, including Mountain Station, had a low-level platform, which required Plaintiff to utilize the trap door in the vestibule to enter and exit the train. (DSOF ¶ 29; PRSOF ¶ 29).  According to Plaintiff, to open the trap door, Plaintiff had to step on a button with his left foot, and then the door would "pop up slightly."  (Affidavit of P. Matthew Darby ("Darby Aff."), Ex. A, ECF No. 85-7 at 99:4-8, 101:7-18).  Then, Plaintiff would "reach out with [his] left hand and . . . open it and lock it into the latching mechanism that[ was] on the wall." (*Id.* at 99:19-25).  Before going down the stairs, Plaintiff was then supposed to pull on the grab iron that was connected to the bottom of the trap door to ensure the trap door was locked into place. (*Id.* at 102:13-18).

According to Plaintiff, when the train reached Mountain Station, he "opened the doors, opened the trap, [and] checked it."  (*Id.* at 107:23 to 108:1).  Plaintiff pulled "on the grab iron to check [the trap door] before [he] went down the stairs" and it did not release.  (*Id.* at 109:17-23). Plaintiff then exited the train and passengers exited thereafter.  (*Id.* at 108:1-2).  Before Plaintiff reentered the train, he grabbed on the grab iron and checked to ensure it was secure before he stepped onto the bottom step. (*Id.* at 110:17-20).  Again, the trap door did not release when Plaintiff checked it.  (*Id.* at 110:21-23).  Plaintiff then "passed the wave" and began climbing up the stairs. (*Id.* at 108:1-2, 91:23 to 92:8).  As Plaintiff was climbing up the stairs, Plaintiff explained "the latch let go, and it was going to hit [him], so [he] ducked."  (*Id.* at 108:3-5).  The weight of the

---

[1] William Wilson, another conductor, and Boguslaw Lozanski, a management employee, were also on the train at the time of the incident.  (PSOF ¶¶ 18, 20; DRSOF ¶¶ 18, 20).

2

door landed on Plaintiff's back and "pushed [him] down and compressed [him], and all [he] heard were two pops." (*Id.* at 108:11-14). Thereafter, Plaintiff "scooted out" of the train and gave a "stop signal" to Rosado. (*Id.* at 108:17-21). After Plaintiff returned onto the train, his "ankle swelled up like a balloon." (*Id.* at 108:21-23). Upon returning to Gladstone, Plaintiff completed and turned in a Scantron form that noted the defective trap door.[2] (*Id.* at 129:15 to 130:1).

On September 11, 2018, Plaintiff commenced this action against NJT seeking damages for injuries sustained to his ankle and low back under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* ("FELA"). (ECF No. 1). On January 19, 2024, Defendant moved for summary judgment, (ECF No. 84), which Plaintiff opposed, (ECF No. 85), to which Defendant replied. (ECF No. 86).

## II.  LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish

---

[2] According to Plaintiff, a conductor must fill out a Scantron form outlining any defects (or no defects) on the train during each shift. (Darby Aff., Ex. A, ECF No. 85-7 at 47:20-48:13, 49:16-52:10). At the end of the day, the conductor must then scan the Scantron on the machine at his or her last destination and place the paper copy of the Scantron in a box at the station. (*Id.*)

3

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). And credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. DISCUSSION

FELA imposes liability on railroads for injuries to their employees. 45 U.S.C. § 51, *et seq.*; *Moncrease v. N.J. Transit Rail Ops., Inc.*, 175 F. Supp. 3d 405, 408 (D.N.J. 2016) ("FELA governs recovery for work-related employee injuries in the railroad industry.").[3] FELA was enacted against the backdrop of "exceptionally hazardous" working conditions for railroad employees that resulted in the "'death or maiming of thousands of workers every year.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994)). The Supreme Court has noted the deliberately broad and remedial purpose of the statute, stating that the "cost of human injury, an inescapable expense of railroading, must be borne by someone, and FELA seeks to adjust that expense equitably between the worker and the

---

[3] 45 U.S.C. § 51 states, in relevant part:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its cars, engine, machinery, track, roadbed, works, boats, wharves or other equipment.

4

carrier." *Sinkler v. Mo. Pac. R.R. Co.*, 356 U.S. 326, 329 (1958).  Notably, under FELA, a railroad will be held liable if its "negligence played any part, even the slightest, in producing the injury or death for which damages are sought," well below common law negligence standards.  *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957); *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 267 (3d Cir. 1991).  Under FELA, an employee's contributory negligence will not bar relief and may only be considered to diminish the employee's recovery of damages in proportion to his or her fault.  45 U.S.C. § 53; *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 166 (2007).

In the Third Circuit, an employee bringing a FELA cause of action must establish that (i) "the defendant is a common carrier by railroad engaged in interstate commerce"; (ii) the plaintiff was "employed by the defendant and assigned to perform duties which furthered such commerce"; (iii) the plaintiff's "injuries were sustained while they were employed by the common carrier"; and (iv) the plaintiff's "injuries resulted from the defendant's negligence."  *Felton v. Se. Pa. Transp. Auth.*, 952 F.2d 59, 62 (3d Cir. 1991).

The parties only dispute the fourth element – that Plaintiff's injuries resulted from Defendant's negligence.  A "[p]laintiff must prove the elements of a common law negligence action: duty, breach, foreseeability, and causation."  *Tramontano v. N.J. Transit Rail Ops., Inc.*, No. 14-5706, 2023 WL 3248238, at *19 (D.N.J. May 4, 2023) (cleaned up).  "A plaintiff in a FELA action must produce direct or circumstantial evidence that justifies or supports an inference of the employer's negligence."  *Caling v. N.J. Transit Rail Ops., Inc.*, 2024 WL 4524113, at *4 (N.J. Super. Ct. App. Div. Oct. 18, 2024) (citing *Stevens v. N.J. Transit Rail Ops.*, 812 A.2d 416, 420 (N.J. Super. Ct. App. Div. 2003)).

Defendants make three arguments in support of its Motion.  First, Defendant argues it did not breach any duty owed to Plaintiff because there is no record evidence establishing "that the

5

trap door latch was defective at the time of the alleged incident." (Br. at 16-20). Second, Defendant contends even if there were a defect present, "a rational jury could not conclude that [Plaintiff's] own negligence was not the sole cause of any claimed injuries he may have sustained." (Br. at 20-27). Finally, Defendant argues Plaintiff cannot establish medical causation for his alleged ankle and back injuries because his proposed medical experts' opinions are inadmissible under *Daubert*. (Br. at 27-38). The Court addresses each argument, in turn.

    **A.** **Genuine Disputes of Material Fact Exist Whether the Trap Door Latch Was Defective.**

The employer's duty of care under FELA is to provide its employees with a reasonably safe work environment under the circumstances. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987). "[A] railroad breaches its duty when it knew, or by the exercise of due care, should have known that its operations were inadequate to protect its employees." *Bruce v. Norfolk S. Ry. Co.*, No. 19-476, 2022 WL 510552, at *3 (W.D. Pa. Jan. 3, 2022) (citing *Urie v. Thompson*, 337 U.S. 163, 182 (1949)).

The Court finds there are genuine disputes of material fact as to whether the trap door latch was defective. For instance, Defendant produced an Investigative Report prepared by Foster J. Peterson, which outlined numerous inspections that were conducted on September 14, 2015, prior to use and Plaintiff's incident and revealed no defects with the trap doors or latches. (*See* Declaration of Foster J. Peterson ("Peterson Decl."), ECF No. 84-4 at 16-19). The Investigative Report also referenced inspections that were conducted on September 15, 2015, and September 22, 2015, which did not indicate any defects with the trap doors or latches. (*Id.* at 20-22). Further, Mr. Peterson opined that there was "no evidence of any defect with the trap door latches . . . prior to or after Mr. Milan's alleged injury." (*Id.* at 24). Defendant also points to the deposition testimony of Plaintiff's railroad liability expert, Gregory Drakulic, who stated, in relevant part, (i)

he could not offer any opinions about whether the trap door or the latch were defective at the time of Plaintiff's incident, and (ii) he could not say whether any of the inspections were not properly done. (Declaration of John W. Gregorek, Esq. ("Gregorek Decl."), ECF No. 84-10 at 29:9-14, 46:19-24).

Plaintiff counters with evidence in support of an opposite conclusion. First, it is undisputed that the mechanical department is responsible for inspecting the trap door latches prior to the train being released to the operating crew. (PSOF ¶ 51; DRSOF ¶ 51). However, Rajan Murphy, a chief trainmaster for NJT at the time of the incident, testified that he had observed the mechanical department perform an inspection and did not "recall watching the mechanical person check the door latches or door bar." (Darby Aff, Ex. C, ECF No. 85-9, at 22:10-23:8).

Further, during his deposition, Plaintiff testified that the trap door latch "let go" when he was climbing the stairs to get back on the train at Mountain Station. (Darby Aff., Ex. A, ECF No. 85-7 at 108:3-5). Since the trap door was going to hit him, Plaintiff "ducked into the trap, and the weight of it landed on [his] back and just pushed [him] down and compressed [him.]" (*Id.* at 108:11-14). Plaintiff also testified that all the trap doors jiggled, (*id.* at 118:8-13, 133:15-19), and Defendant would "add stuff" to the latch to "make it work." (*Id.* at 133:2-11).

Additionally, Mr. Drakulic opined that Plaintiff "was not provided with a reasonably safe place in which to work, in violation of [FELA,]" because of "trap door latch failure at the time of [Plaintiff]'s accident." (Darby Aff., Ex. U at 33-34). Mr. Drakulic also submitted a declaration dated December 28, 2023, whereby he attested, in pertinent part, "that the trap door latch was defective, to a reasonable degree of professional certainty[,]" and that there were "significant flaws in the inspection procedures employed by" NJT. (*Id.* at 3-4).

7

Defendant asks this Court to reject Mr. Drakulic's December 28, 2023 declaration under the "sham affidavit" doctrine. (Reply at 14-15). Under the "sham affidavit" doctrine, a court may disregard an affidavit that contradicts a prior deposition. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). However, the Third Circuit takes a "flexible approach" to this doctrine and has stated that "not all contradictory affidavits are necessarily shams." *Id.* at 254. This Court declines to disregard Mr. Drakulic's declaration, as he provided clarification in his declaration regarding his deposition testimony about the existence of a defective trap door latch and the inspections performed by NJT. (*See* Darby Aff, Ex. U, ECF No. 85-27 at 2-3).[4]

Upon review of the record, the Court finds that under FELA's lowered standards of proof and considering the facts in the light most favorable to Plaintiff, the non-moving party, Plaintiff has produced sufficient evidence that Defendant breached its duty. There are genuine disputes of material fact over, for example, whether the trap door latch constituted a defect and whether Defendant adequately engaged in practices to maintain the latches in a safe condition. *See Urie*, 337 U.S. at 182; *Rogers*, 352 U.S. at 503 ("These were probative facts from which the jury could find that respondent was or should have been aware of conditions which created a likelihood that petitioner, in performing the duties required of him, would suffer just such an injury as he did.").[5]

---

[4] In its reply brief, Defendant also argues for the first time that Mr. Drakulic's testimony is not admissible under Federal Rule of Evidence 702 "because it is unreliable and does not 'fit' the case." (Reply at 14-15). However, "a party cannot raise issues for the first time in a reply brief." *Stern v. Halligan*, 158 F.3d 729, 731 n. 3 (3d Cir. 1998); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n. 3 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." (citing *International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief))); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204-05 n. 29 (3d Cir. 1990) (same); *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.2 (D.N.J. 1999) (same); *D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (same). The Court will not address Defendant's argument raised for the first time in a reply brief. If Defendant seeks to exclude the testimony of Mr. Drakulic from being considered in this matter, Defendant must file an appropriate *Daubert* motion.

[5] In his opposition, Plaintiff also argues Defendant's motion should be denied, as it pertains to the issue of liability, because there is a factual dispute as to whether Defendant was injured by a trap door in violation of 49 C.F.R. § 238.305(c)(8). (Opp'n at 33-37). 49 C.F.R. § 238.305(c)(8) provides: "All trap doors safely operate and securely latch in place in both the up and down position. A non-complying car may continue in passenger service pursuant to

8

B. **There Are Genuine Disputes of Material Fact as to Whether Plaintiff's Own Negligence Was the Sole Cause of the Incident.**

Defendant can only evade liability if Plaintiff was the *sole* cause of his injury. *See, e.g., Romero v. CSX Transp., Inc.*, No. 06-1783, 2008 WL 5156677, at *3 (D.N.J. Dec. 9, 2008) ("The defense of assumption of risk is completely eliminated."); *Tozzi v. Port Auth. Trans-Hudson Corp.*, No. 21-8727, 2023 WL 3614582, at *3 (explaining that contributory negligence does not bar the plaintiff from recovering damages on a FELA claim). At the summary judgment stage, the test for causation is whether the employer's "negligence played any part, *even the slightest*, in producing the injury or death for which damages are sought." *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957) (emphasis added); *Hines*, 926 F.2d at 267. "[A] trial court is justified in withdrawing such issues from the jury's consideration only in those extremely rare instances where there is a *zero probability* either of employer negligence or that any such negligence contributed to the injury of an employee." *Pehowic*, 430 F.2d at 699-700 (emphasis added). Significantly, "a FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion." *Hines*, 926 F.2d at 268 (internal citaiton omitted).

As discussed *supra*, genuine disputes of material fact exist as to Defendant's negligence. Therefore, evidence demonstrating that Plaintiff's negligence played any part in his injuries – including (i) whether it was within Plaintiff's job responsibilities to discover the defect and (ii) whether Plaintiff had other options of train cars to utilize after discovering the defect – must be submitted to the jury for its determination. Accordingly, summary judgment on this issue is not warranted. *See Buchannon v. N.J. Trans. Rail Ops., Inc.*, No. 21-7467, 2024 WL 863305, at *5 (D.N.J. Feb. 29, 2024) (denying summary judgment because there were "genuine disputes of

---

paragraph (d) of this section, if the trap door can be secured by locking out the door for which it is used." As discussed *supra*, there are genuine disputes of material fact whether the trap door latch was defective.

9

material fact as to NJT's negligence[,]" and any disputes over the manner in which "Plaintiff's negligence played any part in his injuries . . . must be submitted to the jury for its determination"); *Porreca v. Nat'l R.R. Passenger Corp.*, No. 98-4137, 1999 WL 199806, at *3 (E.D. Pa. Apr. 7, 1999) (denying summary judgment because "Plaintiff has presented evidence from which a jury could reasonably find that Defendant's negligence caused Plaintiff's injury," and thus disputes over the manner in which an employee performs his job must be submitted to the jury).

### C. **The Court Declines to Consider Whether Plaintiff Can Establish Medical Causation for His Injuries Because Defendant Has Failed to Properly Brief the *Daubert* Issues.**

Federal Rule of Evidence 702 guides a court's determination as to the admissibility of expert testimony. "Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). To fulfill its role as gatekeeper, the court analyzes the admissibility of an expert's testimony pursuant to three requirements of Rule 702: "(1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Id.* at 806 (citing *In re Paoli R.R. Yard PCB Litig.* ("*Paoli II*"), 35 F.3d 717, 741-42 (3d Cir. 1994)). Thus, "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: [i] qualifications, [ii] reliability, and [iii] fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

*First*, "[t]he qualification prong of *Daubert* refers to the requirement that the witness possess specialized expertise." *MD Retail Corp. v. Guard Ins. Grp.*, No. 14-6589, 2017 WL 1164499, at *5 (D.N.J. Mar. 28, 2017). The Third Circuit has "interpreted Rule 702's qualification

10

requirement liberally." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (first citing *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) and then citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). A "broad range of knowledge, skills, and training qualify an expert as such." *Paoli*, 35 F.3d at 741.

*Second*, with respect to "reliability", the Third Circuit has found that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Id.* at 742 (citing *Daubert*, 500 U.S. at 589). The district court enjoys "considerable discretion" to "determine the criteria for judging reliability under the particular circumstances." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002). Generally, an expert's conclusion must rest upon "the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation[.]'" *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Daubert*, 509 U.S. at 590).

*Third*, to satisfy the "fit" requirement, Rule 702 requires that an "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). To be helpful, expert testimony must be "sufficiently tied to the facts of the case [such] that it will aid the jury in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quotation marks and citation omitted). Conversely, "expert evidence which does not relate to an issue in the case is not helpful." *United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (quotation marks and citation omitted).

Defendant argues this Court should dismiss Plaintiff's claims because the opinions of Dr. Bellew and Dr. Smith are inadmissible. (Br. at 27-28). In opposition, Plaintiff argues the present action is a "close . . . case where an expert medical opinion is not required," but even if an expert

11

opinion were required, Dr. Bellew's opinion is admissible. (Opp'n at 39-46). The Court recognizes "[t]he party offering the proposed expert testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence." *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) (citing *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 417-18 (3d Cir. 1999)). Given the parties scant legal arguments relating to the admissibility of Dr. Bellew and analysis of the *Daubert* factors, (*see* Br. 34-36, Opp'n at 46, Reply at 12-13), the Court denies Defendant's motion without prejudice with respect to Dr. Bellew's opinion. Defendant may renew its arguments with respect to the admissibility of Dr. Bellew's opinion in a *Daubert* motion or motion *in limine* and address the qualification, reliability and fit prongs. However, with respect to the admissibility of Dr. Smith, Plaintiff, in a footnote, "consent[ed] to an Order finding Dr. Smith's opinion on causation inadmissible." (Opp'n at 46 n.7). As the parties do not dispute the admissibility of Dr. Smith, the Court grants Defendant's motion as it pertains to Dr. Smith.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion (ECF No. 84) is **GRANTED-IN-PART**, with respect to excluding Dr. Smith's opinion. All other claims for relief are **DENIED**.

DATED: 3/18/2025

HONORABLE JULIEN XAVIER NEALS
United States District Judge